

# THE ATTORNEY GENERAL
## OF TEXAS

GERALD C. MANN

ATTORNEY GENERAL

AUSTIN 11, TEXAS

Honorable George H. Sheppard
Comptroller of P$_u$blic Accounts
Austin, Texas

Dear Sir:

Opinion No. O-4100
Re: Whether gas on which tax has
been paid and injected into the
earth for lifting oil is tax-
able on being "re-produced."

In your letter of October 8th you submit the following
questions:

"High pressure gas is produced and processed
for its gasoline content by 'A' who sells the resi-
due to 'B' for jetting (lifting oil). 'A' pays the
tax on the value of 25% of the gasoline content
plus the gross receipts from the sale of residue
to 'B'.

"'B' saves the low-pressure gas after it has
lifted the oil and sells it back to 'A' for 25% of
the new gasoline content plus 50% of the money re-
ceived by 'A' from the sale of the residue to a car-
bon plant.

"'B' is 'Re-producing' this gas. It seems pro-
per that he should pay a tax on the liquid content
as the gas he puts into the ground had already been
stripped, but will a production tax be due on the
value of the residue going to the carbon plant, as-
suming that the volume of gas sold from 'A' to 'B'
is the same as the volume re-produced by 'B' and sold
back to 'A'?"

We are advised that every producing well produces some
casinghead gas along with the oil, and that when dry gas is in-
jected into an oil well for lifting purposes, some casinghead
gas will be mixed with the injected dry gas when it emerges
from the well in the production process. It seems inevitable,
in the situation described, that all of the liquid hydrocarbons
which are extracted from the gas which comes from "B's" oil
well must have been produced for the first time from "B's" well
since only dry gas was injected into it. A tax, therefore,

based upon a percentage of the gasoline extracted from the gas taken from "B's" well would be a tax only on that part of the gas actually produced from "B's" well as distinguished from the gas which was injected and is being "re-produced." If the operation were 100% efficient, the volume of gas emerging from the well would be greater than the volume of gas injected into the well by the amount of the casinghead gas which is being produced. If after the gas emerging from "B⁺s" well is processed, there is a volume of residue greater than that injected into the well, this excess would represent gas actually _produced_ from "B's" well and his proceeds from the sale of such excess would be properly made the basis of computing the value of the casinghead gas produced by him in addition to his proceeds from the gasoline extracted therefrom.

Under the facts submitted, the volume of gas injected into the well is assumed to be the same as the volume emerging from the well. If there is any method whereby you can accurately determine what proportion of the volume of gas emerging from "B's" well is casinghead gas _produced from that well_ as distinquished from injected gas being "re-produced" then under "Rule 4" of our Opinion No. 0-3516, you may tax "B" based upon that same proportion of his receipts from the sale of the residue gas to the carbon black plant, in addition to his gross receipts from the gasoline extracted.

The residue gas injected into the well is derived from gas upon which a production tax has already been paid, and a second tax is of course not payable upon it being "re-produced," after injection. The tax is payable by "B" only on the gas which emerges from the ground for the first time from his well.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By s/Walter R. Koch
　　Walter R. Koch
　　Assistant

WRK:db:wc

APPROVED DEC 3, 1941
s/Grover Sellers
FIRST ASSISTANT
ATTORNEY GENERAL

Approved Opinion Committee By_BWB_Chairman